**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EBONY PAYNE, PAM HEAVENS, UNITED SPINAL ASSOCIATION, NATIONAL COUNCIL ON INDEPENDENT LIVING, NOT DEAD YET, INSTITUTE FOR PATIENTS' RIGHTS, PROGRESS CENTER FOR INDEPENDENT LIVING, CHICAGO ADAPT, and NOOSHIG LUZ SALVADOR, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>THE HONORABLE JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, THE HONORABLE SAMEER VOHRA, M.D in his official capacity as Director of the Illinois Department of Public Health,<br><br>Defendants. | Case No. 1:26-cv-06886 |

**DECLARATION OF PLAINTIFF EBONY PAYNE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

EBONY PAYNE, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am over 18 years of age and am otherwise competent to make this Declaration. I am submitting this Declaration in Support of Plaintiff's Motion for Preliminary Injunction in the above-captioned litigation. The evidence set out in the following Declaration is based on my own personal knowledge.

2. I am a citizen and resident of the State of Illinois and currently reside in

Chicago, Illinois.

3. I am a quadriplegic, paralyzed from the neck down, and unable to move any of my extremities. This is in part due to a spinal cord injury. I also have trouble breathing due to asthma. I require special breathing treatment, including taking albuterol to unblock the mucus in my sinuses. I need to do this three times every day.

4. I am frequently in and out of the hospital for serious, life-threatening situations. Just earlier this month, I was in the emergency room and then the intensive care unit at Northwestern Medical Hospital in Chicago.

5. I have home care 24 hours a day. I need help with eating, bathing, going to the store, and doctor's appointments. Without assistance, I would not be able to do any of these things, and I would die from starvation. Each of these tasks is a challenge that I face every day. Typically, my mother assists me overnight while a personal assistant helps me during the day.

6. Prior to receiving home care, I lived in at least eight different nursing homes. My experience with nursing homes is that they prioritize profits over care due to their business model and Medicaid reimbursement model. I once had to wait 45 minutes for a nursing home worker to come and clean my tube so I could breathe freely. I am worried that if the state decides that my home care is too expensive, I will have to return to nursing care, or even worse hospitalization, where I will not be able to have control over my own life and people can take advantage of me. I fear that the new assisted suicide law will make home care even harder to access for people like me.

7. I have personally experienced medical discrimination and received inferior

medical care because of my disability. A few years ago, before the law was even a bill, I became very ill. My doctor told my mother that he did not want to continue intubating me, so he suggested administering pain medication to facilitate ending my life that day. Thankfully, my mother, as my medical power of attorney, refused. The doctor suggested comfort care instead of treatment because I am disabled. I was astonished at how little value people see in me because of my disability.

8. Additionally, I could have inadvertently ended my life through assisted suicide had it been legal less than one year ago. In December 2025, I was hospitalized with a very bad infection. The pain from the infection affected my mental state. I was later informed that I asked my doctors at this time to end my life. I do not remember this at all. I was so shocked to learn that I had asked for this while under the delirium of the infection. Luckily, I had a medical power of attorney through my mother and assisted suicide was not legal at the time, so I survived.

9. Being in and out of hospitals so often, I depend on the ethical obligation of every physician that I encounter to do no harm. As a patient, I need to trust these physicians because my disability is life-threatening. The new Illinois assisted suicide law means that I can no longer depend on this obligation, especially during serious flare-ups in my conditions. I am worried what will happen now that this obligation that I used to take for granted will be removed. Once this law goes into effect, I will no longer be able to trust physicians in the same way I could when they had a legal obligation to help me.

10. I am also worried about being pressured into considering suicide as an alternative to treatment by my doctor, hospital, and insurer. I know that algorithms will

identify me as a possible candidate for assisted suicide and I will have to refuse suggestions by health care providers to end my life if the law goes into effect. I feel especially anxious about having to talk about suicide as part of the informed consent process for treatment. Because of the new law, it will be impossible for me to avoid these painful conversations that question the value of my life. It will require me to think about assisted suicide regularly when I did not have to think about the possibility before.

11. The new law devalues people like me. It tells people with disabilities that we qualify for assisted suicide, not for suicide prevention and treatment. I feel demeaned by being classified as someone who can be counseled about assisted suicide. If the law goes into effect, I will experience severe emotional distress because I will have to repeatedly restate my rejection of assisted suicide simply to reassert the value of my life.

12. I am passionate about advocating for people with disabilities to fight for their rights. I am a member of the Illinois Chapter of the United Spinal Association as well as Chicago ADAPT and the Humanize Long-Term Care Committee. I have also received services from the Progress Center for Independent Living.

13. I want the Court to block the Act from going into effect to keep me and people like me safe.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 1st day of July, 2026.

Ebony Payne

Ebony Payne