**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EBONY PAYNE, PAM HEAVENS, UNITED SPINAL ASSOCIATION, NATIONAL COUNCIL ON INDEPENDENT LIVING, NOT DEAD YET, INSTITUTE FOR PATIENTS' RIGHTS, PROGRESS CENTER FOR INDEPENDENT LIVING, CHICAGO ADAPT, and NOOSHIG LUZ SALVADOR, M.D.,

Plaintiffs,

v.

THE HONORABLE JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, THE HONORABLE SAMEER VOHRA, M.D in his official capacity as Director of the Illinois Department of Public Health,

Defendants.

Case No. 1:26-cv-06886

**DECLARATION OF STEPHEN LIEBERMAN, DIRECTOR OF ADVOCACY & POLICY FOR PLAINTIFF UNITED SPINAL ASSOCIATION, IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

STEPHEN LIEBERMAN, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am over 18 years of age and am otherwise competent to make this Declaration. I am submitting this Declaration in Support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned litigation. The evidence set out in the

following Declaration is based on my own personal knowledge.

2. I am the Director of Advocacy & Policy for Plaintiff United Spinal Association ("United Spinal"). I am a citizen of the State of Maryland and I live in Montgomery County, Maryland.

3. United Spinal is a national 501(c)(3) nonprofit membership organization that was founded by paralyzed veterans in 1946. Our organization is run by a Board of Directors, the majority of whom are people with disabilities, and staff that include people with spinal cord injuries. United Spinal is dedicated to empowering and advocating for people living with spinal cord injuries and diseases ("SCI/D") to obtain greater independence and quality of life. Our core business activity is to advance opportunities, social equity, and disability rights for all people living with a spinal cord injury or disease. This includes work on issues such as increasing access to quality, affordable health care and independent living services, enhancing and reforming government benefit systems, and preserving social security benefits in Illinois.

4. United Spinal has approximately 70,000 members nationally, approximately 2,000 of whom reside in Illinois and access United Spinal's services. Our members include wheelchair users with and without spinal cord injuries. United Spinal serves Illinois through the local United Spinal Association Illinois Chapter.

5. United Spinal also works directly with specialized rehabilitation programs that serve Illinois residents, such as the Edward Hines, Jr. VA Hospital, Memorial Medical Center, Northwestern Medicine Marianjoy Rehabilitation Hospital, Shirley Ryan AbilityLab, Schwab Rehabilitation Hospital, and TRYAbility Neurorecovery Center.

6. Spinal cord injuries are often unexpected and initially devastating to newly injured people and their families. Newly injured members of United Spinal face significant challenges, including loss of independence, depression, isolation, loss of self-confidence, and anxiety about what the future will bring. Many members have experienced depression and suicidal thoughts, especially right after their injuries. To help our members during their most challenging times, United Spinal facilitates a peer mentor program. This program connects newly injured members with members who have similar spinal cord injuries and are navigating similar challengers. Peer mentors provide information about personal empowerment and suicide prevention.

7. Though we try to help our members live independently and effectively in the community, many members are unable to do so because of systemic problems in the healthcare and benefits systems, as well as discrimination based on disability. Many of our members are currently experiencing cuts to their personal services due to reductions in Illinois's Medicaid budget, which forces them out of home care into institutionalized settings where they have less autonomy and receive inferior care. Many of our members have directly experienced discrimination by healthcare professionals, including denial and delay of necessary medical services and supports for living at home with paralysis. Healthcare providers have also told our members that their quality of life is poor and that if they had to live like them, they would kill themselves.

8. United Spinal works to counteract this discrimination by informing people with SCI/D about rehabilitation and treatment options, hosting social events and support groups, and facilitating nutrition workshops. We also run outreach programs such as

issuing publications about disability etiquette, what it is like to live with SCI/D, and the legal and medical rights of people with SCI/D. Our mission is to combat disability discrimination and medical discrimination by showing that all human life has value, regardless of a person's medical condition.

9. People with spinal cord injuries generally consider themselves to have a static disability, which means that the disability can be addressed with the right care, services, and supports. Some United Spinal members have been told by doctors that their condition is "terminal," and that they may have a shortened lifespan. However, these predictions have often proven to be wrong.

10. Because some of United Spinal's members have been labeled as "terminally ill" by healthcare providers, they will qualify immediately for assisted suicide under the new Illinois law. The law harms all of our members with severe disabilities, not only those who have considered assisted suicide, because doctors and other medical providers are no longer required to protect them from harm or provide them with suicide prevention services. The law endangers United Spinal's mission of empowering and advocating for people with SCI/D to live a high-quality and independent life because it treats their lives as less valuable than those of non-disabled people.

11. In addition to placing United Spinal members at risk of both discrimination and premature death by assisted suicide, the Act also injures our core business activities. This includes empowering and advocating for people with spinal cord injuries to obtain a better quality of life and greater independence, communicating with people with spinal cord injuries so they better understand their legal and medical rights, and combating the

belief that persons with disabilities are only a problem to be solved.

12. Instead of providing our members with the resources that they need and advocating for their rights, the new law will require United Spinal to take over the suicide prevention services that the State of Illinois fails to provide to people who qualify for assisted suicide. Taking over this work from the State will require more staff time, outreach, and counseling of our members. Many of our members have experienced suicidal thoughts and ideation working through their SCI/D. Based on my knowledge and conversations with others in my organization, I am aware that various United Spinal members in Illinois have considered committing suicide through the law. If the law goes into effect, we will be required to identify members who are more susceptible to suicidal ideation, reach out to them, and counsel them away from suicide. I fear that we will not have enough time to do so unless we have a court order blocking the law. We will also have to help our members navigate relations with physicians who are no longer obligated to do no harm or prevent our members from considering self-harm. In short, our organization will immediately have to fill the gap in services that the State and physicians could previously be counted on to provide. Much of the good work that we have done in discouraging members from suicide has already been lost due to the heightened publicity that the Illinois assisted suicide law has received.

13. United Spinal will also be required to actively monitor the new law. We are concerned that the lack of any meaningful State oversight will mean limited visibility into physicians' decision-making and whether insurers and hospitals are pressuring our members to consider assisted suicide. The law is designed to make it impossible for our

organization to monitor and identify improper solicitations by groups that have an economic interest in ending treatment for those with life threatening disabilities.

14. As a result of the new law, we have already been required to publish position statements opposing assisted suicide; hold public information discussions to inform members about assisted suicide laws and their impact on equality, dignity, and access to care for people with disabilities; and publish articles on assisted suicide. But we need time to put these efforts into effect. We have a strong institutional need for a court order that will give us the time we need to prepare for this challenge. The new law will immediately increase suicidal thoughts and suicidal ideation among our members, inevitably leading some people to seek the help of a physician to take their own lives.

15. The new law is also a direct threat to our ability to continue counseling persons with spinal injuries against dying by suicide, including by physician assisted suicide. I have been informed that the new Illinois law states that using any means to prevent a patient from obtaining or self-administering physician assistant suicide medication is a form of coercion or undue influence. 410 ILCS 22/10. The new law also states that nothing in the law limits civil or criminal liability for using any means to prevent a patient from using lethal mediation prescribed under the law. 410 ILCS 22/95. Dissuading persons with spinal injuries from taking their own lives is a core activity of United Spinal. If the new law goes into effect, we will face a choice between continuing those activities and violating the law. If the law takes effect, our members and volunteers will have to refrain from trying to dissuade people from using physician assisted suicide, or face uncertainty and risk regarding liability under the new law. I believe this will have

a chilling effect on United Spinal's core activities in assisting persons with spinal injuries who are experiencing suicidal ideation.

16. I understand that United Spinal is joined by other Plaintiffs in the lawsuit to enjoin Illinois's assisted suicide law. I can confirm that co-Plaintiffs Ebony Payne and Pamela Heavens are current members of United Spinal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22, 2026.

Stephen Lieberman

Stephen Lieberman
Senior Director of Advocacy & Policy
United Spinal Association