**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EBONY PAYNE, PAM HEAVENS, UNITED SPINAL ASSOCIATION, NATIONAL COUNCIL ON INDEPENDENT LIVING, NOT DEAD YET, INSTITUTE FOR PATIENTS' RIGHTS, PROGRESS CENTER FOR INDEPENDENT LIVING, CHICAGO ADAPT, and NOOSHIG LUZ SALVADOR, M.D.,

*Plaintiffs*,

v.

THE HONORABLE J.B. PRITZKER, in his official capacity as Governor of the State of Illinois, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, and THE HONORABLE SAMEER VOHRA, M.D., in his official capacity as Director of the Illinois Department of Public Health,

*Defendants*.

Case No. 1:26-cv-06886

District Judge John J. Tharp, Jr.
Magistrate Judge David Weisman

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS OF DEB ROBERTSON, BRENDA BOUTTE, SOPHIE MEYN, MAUREEN STATLAND, AND COMPASSION & CHOICES ACTION NETWORK**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. Deb's Law .......... 2

II. Proposed Intervenors .......... 3

ARGUMENT .......... 6

I. Proposed Intervenors May Intervene As Of Right .......... 6

A. Proposed Intervenors' Motion Is Timely .......... 6

B. Proposed Intervenors Have Protectable Interests In This Matter, Which Will Be Impaired Absent Intervention .......... 7

C. Proposed Intervenors' Interests May Not Be Adequately Represented .......... 8

II. The Court Should Allow Proposed Intervenors To Intervene Permissively .......... 13

III. All Parties Are On Notice Of Proposed Intervenors' Positions, Justifying Flexibility With Rule 24(c)'s Requirements .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Airlines, Inc. v. City of Chicago*,
2025 WL 1904439 (N.D. Ill. July 10, 2025)....................6

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022)....................11

*Bost v. Illinois State Board of Elections*,
2022 WL 6750940 (N.D. Ill. Oct. 11, 2022)....................9

*Bost v. Illinois State Board of Elections*,
75 F.4th 682 (7th Cir. 2023)....................8, 9, 10, 12

*Builders Association of Greater Chicago v. City of Chicago*,
170 F.R.D. 435 (N.D. Ill. 1996)....................10, 12, 13, 14

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
595 U.S. 267 (2022)....................11

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020)....................9, 10, 12

*Flying J, Inc. v. Van Hollen*,
578 F.3d 569 (7th Cir. 2009)....................8

*Illinois Restaurant Association v. City of Chicago*,
2007 WL 541926 (N.D. Ill. Feb. 12, 2007)....................14

*Jeffries v. Swank*,
317 F.R.D. 543 (N.D. Ill. 2016)....................6, 7

*New York Public Interest Research Group, Inc. v. Regents of University of New York*,
516 F.2d 350 (2d Cir. 1975)....................13

*PAC for Middle America v. State Board of Elections*,
1995 WL 571893 (N.D. Ill. Sept. 22, 1995)....................7

*Pennsylvania v. President U.S.*,
888 F.3d 52 (3d Cir. 2018)....................12

*Reich v. ABC/York-Estes Corp.*,
64 F.3d 316 (7th Cir. 1995)....................6, 7, 8

*Retired Chicago Police Association v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) ....................15

*Smith v. Board of Election Commissioners for City of Chicago*,
586 F. Supp. 309 (N.D. Ill. 1984) ....................7

*State v. City of Chicago*,
912 F.3d 979 (7th Cir. 2019) ....................6

*U.S. E.E.O.C. v. Taylor Electric Co.*,
155 F.R.D. 180 (N.D. Ill. 1994)....................7

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972)....................12

**Statutes & Rules**

410 ILCS 22/1(b) ....................14

410 ILCS 22/10....................3

410 ILCS 22/60(a)-(b) ....................8

Fed. R. Civ. P. 24....................6, 7, 13, 15

**Other Authorities**

Jesse Bedayn, *'I'm Dying, You're Not': Those Terminally Ill Ask More States To Legalize Physician-Assisted Death*, AP News (Apr. 12, 2024), https://apnews.com/article/medical-aid-dying-legal-physician-assisted-suicide-b67affd86c1d1ce99379ed34bdb2946b ....................1

Blaire Paddock, *Advocates Push for Illinois Legislation That Would Allow Terminally Ill Adults to End Their Own Lives with Medical Assistance*, WTTW (Nov. 13, 2023), https://news.wttw.com/2023/11/13/advocates-push-illinois-legislation-would-allow-terminally-ill-adults-end-their-own-lives....................1

Press Release, Governor Pritzker Signs Bill Expanding End-of-Life Options for Terminally Ill Patients (Dec. 12, 2025), https://gov-pritzker-newsroom.prezly.com/governor-pritzker-signs-bill-expanding-end-of-life-options-for-terminally-ill-patients....................2, 3

# INTRODUCTION

Proposed Intervenors Deb Robertson, Brenda Boutte, Sophie Meyn, Maureen Statland ("Individual Proposed Intervenors"), and Compassion & Choices Action Network ("CCAN") submit this memorandum of law in support of their Motion for Leave to Intervene as Defendants.

On June 11, 2026, Plaintiffs filed suit against Governor J.B. Pritzker, in his official capacity as Governor of the State of Illinois; the Illinois Department of Public Health; and Sameer Vohra, M.D., in his official capacity as Director of the Illinois Department of Public Health (collectively "State Defendants"), challenging the Illinois End-of-Life Options for Terminally Ill Patients Act, 410 ILCS 22/1 *et seq.* (the "Act"), which is scheduled to go into effect on September 12, 2026.

The Act, which is also known as "Deb's Law" after Deb Robertson, one of the Proposed Intervenors, gives Illinoisans with less than six months to live due to a terminal disease the right to control how and when they die, in accordance with their personal values and beliefs. Proposed Intervenors are four individuals and an advocacy organization, each of whom has significant interests in ensuring access to the healthcare option set forth in the Act, starting September 12, 2026. Indeed, Proposed Intervenor Deb Robertson became the face of "Deb's Law" due to her tireless advocacy to bring peace, relief, and control to people who are facing imminent death. *See, e.g.*, Blaire Paddock, *Advocates Push for Illinois Legislation That Would Allow Terminally Ill Adults to End Their Own Lives with Medical Assistance*, WTTW (Nov. 13, 2023), https://news.wttw.com/2023/11/13/advocates-push-illinois-legislation-would-allow-terminally-ill-adults-end-their-own-lives; Jesse Bedayn, *'I'm Dying, You're Not': Those Terminally Ill Ask More States To Legalize Physician-Assisted Death*, AP News (Apr. 12, 2024), https://apnews.com/article/medical-aid-dying-legal-physician-assisted-suicide-b67affd86c1d1ce99379ed34bdb2946b.

Proposed Intervenors readily meet the requirements for intervention as of right under Rule 24(a). *First*, this request for intervention is timely. *Second*, Proposed Intervenors will be adversely affected if the Act is enjoined. Proposed Intervenors seek to ensure autonomy over their end-of-life care and peace of mind knowing that they will be able to get a prescription from their trusted medical provider if and when they so choose. CCAN likewise has an interest in the Act taking effect because it is a nonprofit organization dedicated to fighting for individuals' right to access this end-of-life care and has devoted substantial resources to securing the Act's passage. *Third*, because the State Defendants are differently positioned and lack a personal stake in the availability of this healthcare option, they may not adequately represent Proposed Intervenors' interests in defending the Act. Proposed Intervenors thus respectfully request that the Court grant their motion for intervention as of right or, at a minimum, allow permissive intervention under Rule 24(b).

Proposed Intervenors also respectfully request that the Court allow the filing of their opposition to Plaintiffs' motion for a preliminary injunction, filed with this motion, and that Proposed Intervenors be granted leave to respond to the Complaint pursuant to Rule 24(c) by the same deadline as the State Defendants or three days after a decision granting the Motion to Intervene, whichever is later.

## BACKGROUND

### I. Deb's Law

On December 12, 2025, following years of advocacy, Illinois became the twelfth state to enact legislation granting terminally ill patients the right to request a prescription from their trusted medical provider for medication that the patient may choose to self-ingest to bring about a peaceful death. *See* Press Release, Governor Pritzker Signs Bill Expanding End-of-Life Options for Terminally Ill Patients (Dec. 12, 2025), https://gov-pritzker-newsroom.prezly.com/governor-pritzker-signs-bill-expanding-end-of-life-options-for-terminally-ill-patients. The law, which

takes effect on September 12, 2026, *see id.*, provides a terminally ill, mentally capable adult who has a prognosis of six months or less to live and who follows the Act's procedural requirements with the option to request, obtain, and ingest (or not) prescription medication to bring about a peaceful death. To be eligible, a patient must be an adult, aged 18 or older; must have a medically confirmed terminal disease that is incurable, irreversible, and will likely cause death within six months; must be mentally capable of making an informed health care decision; and must ingest the medication by themselves. *See* 410 ILCS 22/10 (defining key terms as used in the Act).

## II. Proposed Intervenors

The Act is of critical importance to Illinoisans like Proposed Individual Intervenors.

Proposed Intervenor Deb Robertson, after whom "Deb's Law" is named, is a 68-year-old lifelong Illinois resident, licensed social worker, and counselor whose career caring for others shaped her "deep belief in autonomy, dignity, and compassionate care, including at the end of one's life." Robertson Decl. ¶¶ 2-3. In 2022, she was diagnosed with terminal neuroendocrine carcinoma, which has since metastasized to her brain. *Id.* ¶¶ 5-7. Through her own illness and through a support group in which she has lost more than 25 fellow patients, she has witnessed the suffering that can accompany terminal disease and has become convinced of the importance of allowing patients to have control over their own end-of-life experience. *E.g.*, *id.* ¶¶ 9-11. Following her diagnosis, Ms. Robertson began fighting to secure access to medical aid in dying ("MAID") care in Illinois. *Id.* ¶ 13. Ms. Robertson fought so hard to pass the Act because it provides "peace of mind, dignity, and autonomy." *Id.* ¶¶ 14, 20. The Act allows her to focus on living rather than fearing the circumstances of her death. *Id.* ¶ 20. As she explains, knowing the option exists enables her to live "without constant fear about how [she] will die." *Id.* ¶ 15. She seeks to intervene to protect a healthcare option that she believes allows Illinoisans to make end-of-life decisions consistent with their values and wishes. *See id.* ¶ 17.

Brenda Boutte is a 60-year-old Illinois resident in remission from metastatic lung cancer and thyroid cancer. Boutte Decl. ¶ 2. Following her diagnoses and subsequent treatments, she suffers from constant pain caused by severe arthritis and inflammation, scar tissue in her lung, and equilibrium issues due to a brain shunt for hydrocephalus. *Id.* ¶ 3. Ms. Boutte first heard about laws authorizing terminally ill patients to qualify for a prescription for medication that the patients could self-ingest to bring about a peaceful death while living in Colorado. *Id.* ¶ 9. After learning about this, she "felt a weight lift off [her] shoulders" and gained a sense of autonomy from knowing she might be able to control the end of her life. *Id.* Ms. Boutte believes that "this autonomy should be available to people in Illinois, just as [it] has been for years in Colorado." *Id.* If she is ever faced with medical circumstances that qualify her for a prescription under the Act, Ms. Boutte "want[s] to be able to decide when it's [her] time and to have a peaceful end." *Id.* ¶ 12.

Proposed Intervenor Sophie Meyn, who identifies as a person living with a disability, feels similarly. Meyn Decl. ¶¶ 8, 15. In 2016, Ms. Meyn had an MRI that uncovered a brain tumor, and she endured a "seven-hour exploratory brain surgery" during which doctors removed a golf-ball-sized tumor. *Id.* ¶ 4. Ms. Meyn was diagnosed with oligodendroglioma, a slow-growing, recurrent brain tumor that causes her headaches, seizures, muscle weakness, and impairs her ability to control the right side of her body. *Id.* ¶¶ 4-5. In 2021, Ms. Meyn underwent an "awake craniotomy to remove more of the tumor," an experience that was "extremely traumatic" to "recover from physically and emotionally." *Id.* ¶ 5. Ms. Meyn's doctors do not know how much longer her current medication will be effective in shrinking her tumor. *Id.* ¶ 7. Ms. Meyn also continues to suffer from epilepsy and mobility issues, which keep her from "doing many activities that [she] used to enjoy." *Id.* ¶ 8. "Having an incurable brain tumor" has "mean[t] needing to be thoughtful and honest … about the reality of facing the end of [her] life earlier than [she] would

like." *Id.* ¶ 13. For Ms. Meyn, "[t]he Act ensures that [she] will be able to experience the end of [her] life with the same care, thoughtfulness, and intention" with which she has lived her life to date. *Id.* ¶ 15.

Finally, the Act is crucial for Proposed Intervenor Maureen Statland. Ms. Statland is a 62-year-old lifelong Illinois resident who identifies as a person living with a disability and lives with advanced congestive heart failure and non-alcoholic cirrhosis—serious conditions that have profoundly shaped her understanding of illness, caregiving, and end-of-life care. *See* Statland Decl. ¶ 2. Throughout her life, Ms. Statland has dedicated herself to serving older adults facing serious medical conditions. *See id.* ¶ 3. Her commitment to compassionate care deepened when she became the primary caregiver for her father during the final months of his battle with end-stage liver disease. *Id.* ¶ 5. She witnessed firsthand the severe physical suffering and loss of independence that accompanied his decline and "brutal death," *id.*, and later volunteered in hospice care to provide others with the same comfort and dignity her father experienced at the end of his life, *id.* ¶ 6. Ms. Statland's own diagnoses have left her acutely aware of the possibility that she may someday face terminal illness and significant suffering, and she views the Act as providing her an important option among "a full range of end-of-life healthcare options." *Id.* ¶¶ 16, 18-19.

The statute is also critical to CCAN, an advocacy group dedicated to enhancing end-of-life care options nationwide. Armijo Decl. ¶ 3. Since 2018, CCAN has been engaged in extensive advocacy, lobbying, and public education efforts to pass the Act. *See id.* ¶¶ 4-9. Carrying the potential to invalidate the right conferred by the Act, this lawsuit could upend CCAN's yearslong efforts to improve and expand end-of-life care options for Illinoisans and dictate how individuals like Individual Proposed Intervenors live out their last weeks and days. *Id.* ¶¶ 9, 13-14.

## ARGUMENT

### I. PROPOSED INTERVENORS MAY INTERVENE AS OF RIGHT

The Court must grant intervention as of right under Rule 24(a)(2) if the movant "(1) makes a timely application; (2) has an interest relating to the subject matter of the action; (3) that would potentially be impaired by the disposition of the action; and (4) is not adequately represented by the existing parties to the action." *Am. Airlines, Inc. v. City of Chicago*, 2025 WL 1904439, at *2 (N.D. Ill. July 10, 2025) (citation omitted). "[C]ourts construe Rule 24(a)(2) liberally and 'resolve doubts in favor of allowing intervention.'" *Id.* (quoting *Michigan v. U.S. Army Corps of Engr's*, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010)). Each of these requirements is satisfied here.

#### A. Proposed Intervenors' Motion Is Timely

This request for intervention is timely. Courts "look to four factors to determine whether a motion is timely: '(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances.'" *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-798 (7th Cir. 2013)). Each factor weighs in Proposed Intervenors' favor.

*First*, Proposed Intervenors filed this motion to intervene only two months after Plaintiffs filed their Complaint and only four weeks after Plaintiffs moved for a preliminary injunction. *See, e.g.*, *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321-323 (7th Cir. 1995) (reversing and remanding with instructions to allow intervention where there was "a delay of approximately nineteen months in filing the petition to intervene"); *Jeffries v. Swank*, 317 F.R.D. 543, 551 (N.D. Ill. 2016) (finding motion to intervene timely where intervenor "filed his motion within two months of becoming aware that" his interests were affected by the litigation).

*Second*, given the early stage of these proceedings, "[t]he original parties here will suffer no prejudice from the delay" and "intervention would not upset any litigation in progress." *Swank*, 317 F.R.D. at 552. Indeed, Proposed Intervenors have moved to intervene less than "three months after plaintiffs filed their complaint" and "prior to the initiation of discovery." *PAC for Middle Am. v. State Bd. of Elections*, 1995 WL 571893, at *4 (N.D. Ill. Sept. 22, 1995); *see also U.S. E.E.O.C. v. Taylor Elec. Co.*, 155 F.R.D. 180, 182 (N.D. Ill. 1994) (granting intervention where "no delay or prejudice will result from [proposed intervenors'] participation").

*Third*, by contrast, Proposed Intervenors will be prejudiced if their motion is denied, as they would lose the opportunity to vigorously defend their interests in this litigation and in the Act, as discussed in detail below. *Fourth*, "no unusual circumstances support denial of th[is] motion[]." *Smith v. Bd. of Election Comm'rs for City of Chicago*, 586 F. Supp. 309, 312 (N.D. Ill. 1984).

### B. Proposed Intervenors Have Protectable Interests In This Matter, Which Will Be Impaired Absent Intervention

To intervene as of right under Rule 24(a), courts ask whether a would-be intervenor has a "direct, significant legally protectable" interest in the action, focusing on "the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Reich*, 64 F.3d at 322 (quoting *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)). Proposed Intervenors have significant protectable interests threatened by this action's disposition.

Individual Proposed Intervenors each have an interest in being able to obtain a prescription under the Act as an end-of-life care option in Illinois—which is directly threatened by Plaintiffs' attempt to deny them that ability. Individual Proposed Intervenors have experienced greater peace of mind, certainty, and a sense of autonomy since Governor Pritzker signed the Act into law. *See supra* at 3-5. By contrast, the individual Plaintiffs Ebony Payne and Pam Heavens admittedly have no interest in ever qualifying for (let alone obtaining) a prescription under the Act, *see, e.g.*, Compl.

¶ 1 ("Plaintiffs bring this action to stop enforcement of the Illinois [Act]."), nor would they be compelled to, given that requesting a prescription is purely voluntary under the Act, *see supra* at 3. Moreover, the Act expressly provides that healthcare providers like Plaintiff Nooshig Luz Salvador "shall not be under any duty, by law or contract, to participate in the provision of aid-in-dying care." 410 ILCS 22/60(a)-(b). That is, the individual Plaintiffs do not stand to lose *anything* if the Act is implemented, whereas an extremely important right will be taken away from Individual Proposed Intervenors if the Act is enjoined. And because Individual Proposed Intervenors are the "private persons intended to be benefitted by" the Act and "[i]nvalidation of the statute would deprive them of [its] benefit," they have an interest sufficient to justify intervention as of right. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009).

Intervention by CCAN is similarly warranted because it has "an interest as an organization that would have to expend additional resources" if the law were to change and because it has "an associational interest on behalf of its members … should the law change." *Bost v. Illinois State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023) (finding that the Democratic Party of Illinois ("DPI") had a "direct, significant and legally protectable interest" in lawsuit challenging state electoral law but denying intervention on other grounds). CCAN has committed substantial resources in recent years to help pass the Act. Armijo Decl. ¶¶ 4-9. Were the Act to be enjoined, CCAN would be forced to devote even more resources to seek to have it reinstated. *See id.* ¶ 13.

Because of the direct, imminent effect that the Act and its potential injunction would have on Proposed Intervenors, Proposed Intervenors have a "direct, significant legally protectable" interest in this litigation that justifies intervention. *Reich*, 64 F.3d at 322.

**C. Proposed Intervenors' Interests May Not Be Adequately Represented**

The Seventh Circuit applies "three different standards for showing inadequacy depending on the relationship between the party and the intervenor." *Bost*, 75 F.4th at 688. The "default"

rule "applies when there is no notable relationship between the existing party and the applicant for intervention," while "an intermediate standard" applies if "the prospective intervenor and the named party have 'the same goal.'" *Id.* (quoting *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019)). The "strictest test applies when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors." *Id.* (cleaned up). Neither of the heightened tests for adequacy apply here.

*First*, the "strictest adequacy test" does not apply because the State Defendants are not "legally required to represent the interests of" Proposed Intervenors. *Bost*, 75 F.4th at 688. It is not enough that State Defendants are governmental agents or bodies who may represent Illinoisians in general. *See id.* ("[I]t is uncontested that the Board [of Elections] (*though a governmental body*) is not 'legally required to represent the interests of' DPI." (emphasis added)); *cf. id.* at 689 (finding heightened test did not apply where government defendants' "obligations are to the general public, not to" proposed intervenors). Nor is there any evidence that State Defendants are "charged by law with protecting" Proposed Intervenors' specific interests. *Id.* at 688.[1]

*Second*, the "intermediate standard" does not apply because Proposed Intervenors and State Defendants do not have "the same goal." *Bost*, 75 F.4th at 688. "For the potential intervenor and the named party to have 'the same goal,' it is not enough that they seek the same outcome in the case." *Id.* After all, "a prospective intervenor must intervene on one side of the 'v.' or the other and will have the same general goal as the party on that side," so "[i]f that's all it takes to defeat intervention, then intervention as of right will almost always fail." *Driftless Area Land*

[1] For example, there is no statute specifying that the State Defendants have a duty to represent the interests of patients interested in accessing the healthcare option set out in the Act, and it is not enough that the State has a general duty to enforce its laws. *Cf. Bost v. Illinois State Bd. of Elections*, 2022 WL 6750940, at *5 (N.D. Ill. Oct. 11, 2022) ("Although the State Board is undeniably charged with administering Illinois election law, it is not charged by law with protecting the interests of political parties."), *aff'd*, 75 F.4th 682 (7th Cir. 2023).

*Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020). Courts therefore apply a "more discriminating comparison of the absentee's interests and the interests of existing parties" and "find that they have 'the same goal' only where the interests are genuinely 'identical.'" *Bost*, 75 F.4th at 688 (quoting *Driftless*, 969 F.3d at 748). As discussed above, Individual Proposed Intervenors have an interest in maintaining access to the prescription authorized by the Act and its accompanying peace of mind, certainty, and autonomy, which are each threatened by this lawsuit, while CCAN—whose advocacy and investments helped facilitate passage of the Act—has an interest in preserving access for eligible patients. *See supra* at 3-5. By contrast, State Defendants do not stand to lose anything, such as the personal ability to access a prescription, if Plaintiffs are successful. Moreover, "[n]othing in the record or in the briefing suggests that the [State Defendants are] interested in [CCAN's] financial expenditures, the execution of [CCAN's] mission, or the elements of [CCAN's] work that will suffer if resources are diverted elsewhere." *Bost*, 75 F.4th at 689. Instead, the State Defendants' "'obligations are to the general public, not to' [CCAN] or its members alone." *Id.* (quoting *Driftless*, 969 F.3d at 748). Accordingly, although Proposed Intervenors and State Defendants "each want the law upheld, the stakes for each of them are different," precluding a finding that Proposed Intervenors have identical goals with any existing defendant. *Bost*, 75 F.4th at 689.

The default rule "is a lenient one." *Bost*, 75 F.4th at 688. Proposed Intervenors "need only show that representation of his interest by the existing party *may be* inadequate." *Id.* (emphasis in original) (cleaned up). Proposed Intervenors "do not need to show, to a certainty, that the [State Defendants] will not fully protect their interests; rather, they need only show that the [State Defendants] *might* fail to do so, and the burden of making that showing should be treated as minimal." *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 441 (N.D. Ill.

1996) (emphasis added) (cleaned up). Indeed, courts in this district have concluded that a government defendant may not adequately represent intervenors' interests even where they all desire the same outcome in a litigation at the time intervention is sought because if the interests of the defendant and proposed intervenors are "different in kind," there is the possibility that they may diverge later in the litigation. *Id.* This makes sense given the competing pressure that potential intervenors face to move to intervene quickly under Rule 24, which requires movants to make a "timely" application for intervention while also establishing that the other factors for intervention are met at what should be an early stage of proceedings.

Here, Proposed Intervenors have distinct interests that the State Defendants may not pursue at all, or may not pursue as zealously as Proposed Intervenors themselves would. As discussed above, Proposed Intervenors would immediately be deprived of autonomy over their end-of-life care, denied access to a healthcare option that the Act made available, and lose the fruit of years of lobbying and advocacy. By contrast, while the State Defendants may seek to defend the Act because they have an "interest in the continued enforce[ment] of [their] own statutes," *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) (quoting *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022)) (alterations in original), they do not otherwise stand to lose anything, such as the unique, urgent, and—in the case of Individual Proposed Intervenors—personal deprivation that Proposed Intervenors face.

Courts have recognized that this type of personal stake necessarily differentiates the interests of intervenors from those of government defendants. For example, in *Builders Association of Greater Chicago*, the court concluded that the City of Chicago might not adequately defend a group of minority businessowners, despite the City sharing the businessowners' goal of maintaining the City's minority- and women-owned business procurement program, because

unlike the intervenors, the City did not have a "direct" stake in the government program and might be inclined to accept a settlement that could deprive the intervenors of the benefits of this program. 170 F.R.D. at 441. Similarly, the Third Circuit has held that an intervenor's burden to show inadequate representation is "comparatively light" when a government entity defendant's "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Pennsylvania v. President U.S.*, 888 F.3d 52, 60-61 (3d Cir. 2018) (internal citations omitted).

Because State Defendants are not subject to the same deprivation of rights as Proposed Intervenors, State Defendants may not appreciate the urgent nature of this action and the harm to Proposed Intervenors that would result from, for example, a lengthy briefing or discovery schedule—especially if the Act is even temporarily enjoined—or from agreeing to a settlement that would deprive Proposed Intervenors of access to this important healthcare option. Conversely, Individual Proposed Intervenors have a strong interest in ensuring that this case is conducted with the sense of urgency that, from their standpoint, it demands, given their diagnoses. *See, e.g.*, *Driftless*, 969 F.3d at 749 (granting intervention as of right where, among other things, the government "may be content to move slowly" but intervenors "want to move quickly"). Unlike in *Bost*, this presents a potential conflict between the State Defendants and Proposed Intervenors, not just a "comparison of interests," which justifies intervention. 75 F.4th at 690; *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-539 (1972) (allowing intervention because, *inter alia*, the existing party's interest "may not always dictate precisely the same approach to the conduct of the litigation").

Moreover, Individual Proposed Intervenors each have deeply personal perspectives on the importance of the Act that they can draw on to defend against Plaintiffs' effort to invalidate it. *See*

*supra* at 3-5. CCAN, for its part, has a depth of knowledge regarding the Act and legislation like it—including over 30 years of experience and data as to how similar legislation has been implemented across the country and what its effects have been—that State Defendants cannot match, given that State Defendants are relative newcomers to this policy area and are familiar only with Illinois's recent legislative effort. *See Builders Ass'n*, 170 F.R.D. at 441 (explaining that even if the government defendant "appears willing to come forward with [its own] evidence," representation was still inadequate because intervenors "are likely to supplement the [government's] evidence … with anecdotal evidence of the experiences of their members"); *see also N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (granting intervention where "there is a likelihood that the [intervenors] will make a more vigorous presentation of the economic side of the argument than would the" state regulator that issued the challenged regulation).

In sum, State Defendants may not adequately defend Proposed Intervenors' interests because State Defendants will not experience the urgent, personal deprivation that Individual Proposed Intervenors will and lack the same arguments and evidence to defend the Act.

## II. THE COURT SHOULD ALLOW PROPOSED INTERVENORS TO INTERVENE PERMISSIVELY

In the alternative, the Court should allow intervention under Rule 24(b). Permissive intervention "is appropriate where the motion is timely, the applicant's claim or defense has a question of law or fact in common with the main action, and intervention will not unduly delay or prejudice the rights of the original parties." *Builders Ass'n*, 170 F.R.D. at 441 (citing *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991)); *see also* Fed. R. Civ. P. 24(b)(1)(B).

As discussed in Part I.A, this motion is timely. *See supra* at 6-7. There can also be no doubt that Proposed Intervenors—who have an interest in accessing the healthcare option

authorized in the Act—have defenses that present common questions of law and fact with the main action, which squarely seeks to deny patients such as Individual Proposed Intervenors and CCAN's constituents the ability to obtain a prescription if and when they meet the Act's eligibility criteria. *See Builders Ass'n*, 170 F.R.D. at 441 (permissive intervention warranted because intervenors' "interest in the litigation is the mirror-image of the [plaintiffs'] interest: they clearly present a 'common issue of law or fact'"). Finally, intervention will not result in delay or prejudice, as this case is in its earliest stages, no dispositive motions have been filed, and no discovery has occurred.

The Court should also exercise its discretion to grant intervention under Rule 24(b) because intervention will aid the Court in resolving Plaintiffs' claims. *Cf. Illinois Rest. Ass'n v. City of Chicago*, 2007 WL 541926, at *2 (N.D. Ill. Feb. 12, 2007) (denying intervention where it "will not aid the court in adjudicating the legal questions at issue"). Proposed Intervenors offer unique perspectives that will be invaluable for the adjudication of Plaintiffs' claims, including because Proposed Intervenors will be able to vigorously defend the interests underlying the Act. *See supra* at 10-13. In addition to the expertise that CCAN brings as an organization dedicated to expanding end-of-life care options and the fact that the Act is also referred to as "Deb's Law" in recognition of the yearslong advocacy that Ms. Robertson dedicated to securing the Act's passage, 410 ILCS 22/1(b), Ms. Robertson, Ms. Boutte, Ms. Meyn, and Ms. Statland each live with medical diagnoses that have led them to rely on the care option authorized by the Act when planning for their end-of-life healthcare.

## III. ALL PARTIES ARE ON NOTICE OF PROPOSED INTERVENORS' POSITIONS, JUSTIFYING FLEXIBILITY WITH RULE 24(c)'S REQUIREMENTS

To provide the Court and parties with a comprehensive understanding of Proposed Intervenors' positions relating to the underlying matter, attached to this Motion is Proposed Intervenors' proposed brief in opposition to Plaintiffs' pending preliminary injunction ("PI")

Motion. *See* Chabot Decl., Ex. A. If the Court grants Proposed Intervenors' motion to intervene, whether as of right or permissively, Proposed Intervenors respectfully request that the Court accept the filing of Proposed Intervenors' Brief in Opposition to Plaintiffs' PI Motion, and that the Court grant them leave to respond to the Complaint by the same deadline as State Defendants or three days after a decision granting the Motion to Intervene, whichever is later.

Rule 24(c) requires intervenors to submit a pleading setting out "the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), but courts in this Circuit "do not take an inflexible view of this rule," and "if no prejudice would result, a district court has the discretion to accept" a Rule 24 motion that does not include an answer or motion to dismiss, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993). There is no prejudice here because this brief and the attached opposition to Plaintiffs' PI Motion sufficiently apprise existing parties of Proposed Intervenors' intent to defend the Act against each of Plaintiffs' allegations, based on Proposed Intervenors' subject-matter expertise. Accordingly, Proposed Intervenors respectfully submit that waiver of the strict pleading requirement is justified here.

## **CONCLUSION**

The Court should grant Proposed Intervenors' motion to intervene as of right under Rule 24(a) or, in the alternative, permit Proposed Intervenors to intervene under Rule 24(b). Proposed Intervenors also respectfully request that the Court accept the filing of Proposed Intervenors' Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction, attached, and that Proposed Intervenors be granted leave to respond to the Complaint by the same deadline as State Defendants or three days after a decision granting the Motion to Intervene, whichever is later.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Ryan Chabot*
WILMER CUTLER PICKERING
HALE AND DORR LLP
Ryan Chabot*
Sean C. Chang*
Annabel Chosy*
Maria Smith*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6513
ryan.chabot@wilmerhale.com
sean.chang@wilmerhale.com
annabel.chosy@wilmerhale.com
maria.smith@wilmerhale.com

COMPASSION LEGAL
THE END-OF-LIFE JUSTICE CENTER AT
COMPASSION & CHOICES
Amy Subach, Esq. (She/Her)*
Jess Pezley, Esq. (She/Her)*
8156 S. Wadsworth Blvd. E162
Littleton, CO 80128
(800) 247-7421
asubach@compassionandchoices.org
jpezley@compassionandchoices.org

Eric Parker
STOTIS & BAIRD CHARTERED
200 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60606
(312) 461-1000
eparker@stotis-baird.com

**Pro hac vice forthcoming*

*Attorneys for Deb Robertson, Brenda Boutte, Sophie Meyn, Maureen Statland, and Compassion & Choices Action Network*